**ALANNA D. COOPERSMITH, SBN 248447**
Attorney at Law,
717 Washington Street
Oakland, California 94607
T-(510) 628-0596
F-(866) 365-9759
alanna@eastbaydefense.com

Attorney for Defendant
Aldo Alvarez

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        vs.<br><br>ALDO ENRIQUE ALVAREZ,<br><br>        Defendant. | NO. 19-CR-00271-003 HSG<br><br>**DEFENDANT ALDO ALVAREZ'S DEFERRED SENTENCING MEMORANDUM**<br><br>Date:  September 1, 2021<br>Time: 10:00 AM<br>Hon. Haywood S. Gilliam Jr. |

**INTRODUCTION**

Defendant, Aldo Alvarez, humbly comes before this court or sentencing.  His sentencing has been deferred pursuant to a deferred-sentencing structure modeled after the Alternatives to Incarceration Program (or "ATIP").

Because of the extraordinary progress he has made at CenterPoint drug treatment program, and other milestones he has met that demonstrate beyond doubt his remorse and rehabilitation, he respectfully requests a sentence of time served.

More specifically, he urges a sentence of time served to be followed by three years of supervised release with appropriate conditions.

**PROCEDURAL HISTORY**

By Indictment filed on June 18, 2019, codefendants Fausto Montes and Edgar Flores were charged with three counts and Aldo Alvarez was charged with one count of possession with intent to distribute 50 grams or more of methamphetamine.

On November 19, 2019, Mr. Alvarez attended a safety valve proffer session with the government, and was the first defendant to do so.  On January 31, 2020, Mr. Alvarez was the first defendant to plead guilty.  He entered an open plea before the Honorable Haywood S. Gilliam Jr.  At that hearing, the government represented that he qualified for safety valve.

Mr. Alvarez through counsel applied to participate in the Alternatives to Incarceration Program ("ATIP").  Pretrial Services, which assists the court in administering the program, determined Mr. Alvarez to not be a suitable candidate.

At a status of sentencing hearing on August 10, 2020, the court suggested an alternative course to ATIP, which defendant accepted, and the government did not oppose.[1]  Although he would not partake in the ATIP program, Mr. Alvarez would nevertheless be subject to deferred sentencing.  The court proposed a target date for sentencing nine or twelve months out.  As Mr. Alvarez had begun treating at CenterPoint in November of 2019, that framework would give Mr. Alvarez an eighteen-month trajectory to benefit from structured substance abuse treatment.

---

[1] As the government did not participate in ATIP, it took no position.

A status hearing was held on November 16, 2020, at which Pretrial Services Officer Sean Hamel reported that

> Mr. Alvarez has been doing fantastic on supervision.  He checks in with me regularly.  He sends me his paystubs as requested.
>
> He is currently in treatment.  He is in individual counseling and group counseling.  He attends all of them.  I do not believe he has missed any.
> I did speak with his clinician five days ago, and he said that he is doing really well, and he's progressing, and he continues to grow.

Transcript, Nov. 16, 2020, at pp. 2-3.

At a status hearing of March 22, 2021, at which Pretrial Services Officer Hamel echoed Mr. Alvarez's dedication to recovery, a sentencing hearing was set for this summer.  Counsel expects that Mr. Hamel will report favorably on Mr. Alvarez's continued substance-use rehabilitation.  At the deferred sentencing hearing of September 1, 2021, we will request that Mr. Alvarez receive a sentence of imprisonment of time served, followed by three years of supervised release.

## ARGUMENT

### I.   The Advisory Sentencing Guidelines

Criminal "punishment should fit the offender and not merely the crime."  *Williams v. New York*, 337 U.S. 241, 247 (1949).  This requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes, magnify, the crime and punishment to ensue."  *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 18, 113 (1996).

"The district court may not presume that the Guidelines range is reasonable … nor should the Guidelines factors be given more or less weight than any other."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); *see also United States v. Rita*, 551 U.S. 338, 351 (2007). "The Guidelines should be the starting point and initial benchmark."  *Gall*, 552 U.S. at 49. "While the Guidelines factors are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence."  *Carty*, 520 F.3d at 991.

In fashioning a fair sentence, the court should consider the factors set forth in 18 U.S.C. § 3553(a). The "overarching" goal is to "'impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing," including reflecting the seriousness of the offense; promoting respect for the law; providing just punishment; affording adequate deterrence; and protecting the public from further crimes of the defendant. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). The court is not required to use a formulaic approach to produce a mathematical justification for a sentence outside of the Guidelines. *See Gall*, 552 U.S. at 38. Rather, it must exercise a "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita v. United States*, 551 U.S. 338, 358 (2007). In short, the court's duty is to render a sentence that is sufficient, but no greater than necessary, to fulfill § 3553(a)'s objectives.

Under the advisory Sentencing Guidelines, Mr. Alvarez is entitled a reduction of two levels for safety valve under USSG § 2D1.1(b), and to the following downward adjustments.

## A.    Acceptance of Responsibility

Mr. Alvarez accepted responsibility for committing his offense. He has acknowledged his serious mistake without reservation. He was the first defendant to come forward and disclose the nature of his criminal conduct in a safety valve proffer, and he was the first defendant to plead guilty.

Having accepted responsibility in a time and manner that spared the government the expense of preparing for trial, he is entitled to a three-level downward departure under § 3E1.1.

## B.    Minor Role

Under all the circumstances, Aldo Alvarez was substantially less culpable than the "average" person in the offense of drug trafficking. (U.S.S.G. § 3B1.2.)

This case stems from a DEA investigation of the Fausto Montes and Edgar Flores drug trafficking organization. (PSR ¶ 8.) Aldo Alvarez was a relatively small player who was caught up in that probe. The Indictment charges three incidents of drug trafficking, and Mr. Alvarez is named in one of those incidents. (Indictment (Doc. 18).) The government investigation does not suggest that he communicated with the confidential source, or negotiated quantity or price. Mr.

Alvarez parked in a parking lot.  Mr. Flores removed a bag from the front passenger-side of the vehicle, and provided it to the putative buyer.  PSR ¶ 12.

Mr. Alvarez's confession upon his arrest and safety-valve proffer session with the government compel the conclusion that he was an auxiliary to the offense, who did not any agency or control whatsoever of the drug-trafficking operation.  After he broke his collarbone in a motorcycle accident, he was sidelined from his landscaping job and moved back in with his mom, stepfather, and younger siblings.  He felt ineffectual and depressed, and eased his discomfort by getting high on cocaine.  At some point, his stepfather used him to run drug errands.  When he would meet up with the supplier, the supplier would say, "Are you Marco's son?"  Mr. Alvarez did not plan the transactions, such as quantity, price, time or location.  Mr. Alvarez did not keep track of how much (or little) money he netted,[2] and forked over the cash he received to his stepfather.

For these reasons, the Guidelines calculation should reflect a two or three level reduction for his minor role.

## II.   Mr. Alvarez has Met the Expectations of Deferred Sentencing and Deserves a Non-Custodial Sentence

Just as the name suggests, the Alternatives to Incarceration Program or ATIP envisions court-sanctioned program activities as an alternative to incarceration.  For high-needs offenders, with little criminal history, and who are extremely motivated to address the root-causes of their criminal activity, completion of structured and appropriately-tailored programs in the community is a **better** way to keep society safe than locking them up.  Such is the case with Aldo Alvarez.

Thus, the Court fashioned a deferred-sentencing track for Alvarez Alvarez that is parallel to ATIP but not any less rigorous.  As explained further below, for at least the past 21 months, Mr. Alvarez has participated in an intensive regimen of therapeutic programs at CenterPoint, while maintaining a full-time job and reporting to Pretrial Services.  He has satisfied or exceeded the expectations of the Court.

---

[2] In the safety-valve proffer he estimated $200 to $400 per week.

As an initial matter, Mr. Alvarez's substance-use disorder had a direct relationship to his episode of criminal conduct. *See* Letter of Teresa Cole of CenterPoint, attached as Exhibit A. Mr. Alvarez was high on cocaine while engaging in the behavior charged in this case. More broadly, his uncontrollable substance abuse and depression contributed to his criminal conduct, by clouding his (ordinarily good) judgment, reducing his resilience, and diminishing his forward-looking thinking.

For almost two years, Mr. Alvarez has participated in substance abuse and mental health treatment under the Supervision of Pretrial Services. He participates in randomized drug testing. He attends individual therapy once a week. He attends group counseling once a week. He sometimes attends more meetings than required, and he extends assistance to others as a mentor. In November of last year, Pretrial Services broached reducing random drug tests from five times to three times a month. Mr. Alvarez asked Sean Hamel to keep random testing at five times a month.

## III.   Analysis of the 18 U.S.C. § 3553 Factors Justifies a Noncustodial Sentence

A case-specific, individualized assessment of what brought Mr. Alvarez here, and what measures will protect the public and promote respect for the law, pursuant to 18 U.S.C. § 3553, further counsels in favor of this court imposing a noncustodial sentence.

### A.   The Circumstances of the Offense

The circumstances of this offense tell a lot about the severity of the punishment warranted. Mr. Alvarez was 28 years old and had no criminal record other than a DUI. He is 30 years old now. His participation in the instant offense is not only something he sincerely and deeply regrets, it is an aberration.

After breaking his shoulder in a vehicle accident, he had to stop working. Moving back in with his family and being unable to financially support his little brother and sister any longer, made him feel useless and despairing. He started using marijuana and cocaine heavily. In addition, he assisted others in the sale of methamphetamine to earn cash.

He deeply regrets his conduct.  Today, he has gotten his job back and is working full-time.  He accesses CenterPoint services to treat his depression and keep his substance use disorder in remission.

**B.    The History and Characteristics of the Defendant**

Some people who make the journey of alcohol/substance rehabilitation only show up because a judge requires it of them, and they do the bare minimum.  Not Aldo Alvarez.

He participates in one hour of individual mental health counseling per week and four hours of group substance abuse counseling per week, in addition to complying with random drug testing.[3]  As his boss and mentor Roxy Wolosenko observes: "[H]e tells me about the classes he is taking for substance abuse and for mental health and he seems to really take these classes seriously.  I think he has matured tremendously.  He freely shares insights with me about how he used to think about things and how he has changed his viewpoints after the sessions.  He seems to be more aware than most people I know, and he's open about his thoughts and plans."  *See* Letter of Roxy Wolosenko attached as Exhibit B.

Wolosenko adds, "He manages to fit in all the classes while still working between 40-45 hours/week for me which I think is very admirable."  *Id.*  She notes that Aldo Alvarez is smart, ambitious, and hard working.  Even though she plans to retire and close her business, she has offered to help Mr. Alvarez to afford college in order to advance his career.

As the PSR notes in detail, Mr. Alvarez endured childhood trauma, from abandonment and neglect, to poverty and physical abuse.  PSR ¶¶ 40-42.  In spite of these almost insurmountable obstacles, Mr. Alvarez has proven himself to be a productive member of our community.  He has the presence of mind to correct himself when he errs.

**C.    The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public**

---

[3] As mentioned, Pretrial Services offered to reduce random drug testing to three times a month, but Mr. Alvarez requested to keep random testing at five times as month.

The defendant acknowledges that this offense is a serious matter.  He will feel the consequences of his actions for the remainder of his life, including the stain of a felony conviction and the harsh effect on his immigration status.

But to reward Mr. Alvarez for his successful performance on deferred sentencing will vindicate the rule of law.  It will promote respect for our system of laws and incentivize other defendants in his position to achieve rehabilitation.

Not insignificantly, the sentence we urge of imprisonment for time served to be followed by three years of supervised release will foster protection of the public by ensuring that Mr. Alvarez is monitored by Probation and continues to be accountable.

### D.    Avoidance of Disparity

The sentence proposed would be in keeping with the sentences imposed on other defendants.  Mr. Montes is the most culpable, Mr. Flores the next most culpable, and Mr. Alvarez the least culpable.  This is in addition to the fact that Mr. Alvarez is the only defendant who persisted with daunting rehabilitation while holding a job.

A sentence of 72 months for Fausto Montes, 24 months for Edgar Flores, and non-custodial punishment for Aldo Alvarez will be commensurate to the defendants' culpability and personal rehabilitation.

### E.    The Kinds of Sentences Available

Aldo Alvarez has qualified for safety valve.  As such, he does not have a mandatory minimum prison sentence.  The court can, and should, avail itself of the deferred sentencing structure provided by ATIP and impose a sentence of times served followed by supervised release with all appropriate conditions.

## CONCLUSION

In light of his successful performance on his deferred-sentencing drug rehabilitation program, to be confirmed by Pretrial Services at sentencing, defendant, Aldo Alvarez, respectfully requests a prison sentence of time served to be followed by three years of supervised release with conditions.

Dated: August 25, 2021                                    Respectfully Submitted,


Alanna D. Coopersmith
Attorney for Defendant,
Aldo Alvarez

**Exhibit A**

**Teresa Cole LPCC**
Center Point
1470 Civic Court, Suite 100
Concord, CA 94520
Tcole@cpiprograms.org


March 13, 2020

**Nelson Barao**
U.S. Pretrial Services
1301 Clay Street, Suite 100
Oakland, CA 94612
Nelson_Barao@canpt.uscourts.gov


Re: Aldo Alvarez. Dkt. CR-19-0271

Dear Mr. Barao:

I am writing on behalf of my client Aldo Alvarez.  Aldo receives individual mental health counseling for treatment of Substance Abuse Disorder and Depression.  Additionally Aldo has a history of trauma that impacts his substance abuse and depression.  Aldo is making progress in treatment and is recommended for referral to Center Point's Substance Abuse Group Counseling program.  Furthermore Aldo would benefit most from CAP/ATIP and is most suitable as the offense he committed is a direct result of his substance problem.  Aldo has support and is making progress in resolving his substance use disorder and depression.

Respectfully,




**Teresa Cole LPCC**

**Exhibit B**



# Roxy Designs

315 Oakvue Lane
Pleasant Hill, CA 94523
Tel: (925) 300-3948
roxy@roxydesigns.com

Lic. No. 905218

To: The Honorable Judge Haywood Gilliam
RE: Aldo Alvarez
August 2, 2021

Dear Honorable Judge Gilliam,

I am writing this letter to share my insights about Aldo Alvarez as his employer. Aldo began working for me in October 2014 until his collarbone-breaking accident in April 2018 (3.5 years). He then returned to work for me July 2019 through the present time (2 years). I hired Aldo when he was 23 without extensive experience but a good attitude. He was and continues to be a very hard worker. He quickly gained the respect of his co-workers, my main foreman and me so within a couple of years Aldo was promoted to a position of crew leader. As crew leader he is responsible for directing the work, ordering materials and planning the weekly schedule of work. When we began incorporating new time-keeping software for the workers, Aldo was our beta case and he provided feedback on working with the system and suggested improvements for our workflow. Aldo is always on time, with a can-do attitude and an appetite for learning. He is always calm, with a good sense of humor and gets along well with all the crew members. He troubleshoots problems that he can foresee on the job and takes care of them right away or shares ideas for solutions. I have had numerous clients tell me, unbidden, that he's great because he takes care of what they ask with a smile and even helps them if he sees them struggling with something unrelated (children, groceries, moving something heavy). He is truly kind.

Before his accident, I often spoke with Aldo about continuing his education and offered to pay for his classes and give him extra time off, but he was not able to take advantage of it because he was helping to support his two younger siblings and he needed to be home to take care of them when his mother was working. I was impressed at his sense of responsibility and his good-natured attitude about it (how many twenty-somethings take care of their sibs – and with a smile??). At Christmas one year, after he received his bonus, I asked him what he thought he would do with it. Without missing a beat, he said he'd been saving up for a gaming system for his younger brother and the bonus would help him be able to get that for him for Christmas. I was very touched.

After Aldo's accident, his recovery lasted a long time. Since his work often includes heavy lifting, his collarbone had to be completely healed and he had to do physical therapy before he'd be released by the doctor to return to work.  He was very frustrated and bored, and it was at this time that he made some bad decisions.

After Aldo got out of pretrial detention, he contacted me, and I was very happy to welcome him back. He was completely honest with me and told me about everything that had happened. He and I often talk when I see him on the job, and he tells me about the classes he is taking for substance abuse and for mental health and he seems to really take these classes seriously. I think he has matured tremendously. He freely shares insights with me about how he used to think about things and how he has changed his viewpoints after the sessions. He seems to be more self-aware than most people I know, and he's open about his thoughts and plans. He manages to fit in all the classes while still working between 40-45 hours/week for me which I think is very admirable. When he has a conflict in his schedule for some court or probation related engagement, he notifies me well in advance. I wish my other employees were as considerate.

Aldo is smart, ambitious and hard-working. I have offered to help him take college classes and I hope that he will accept my offer. He is a solid citizen who I am sure will make a success of his life. And now he and his girlfriend are expecting a child, so our conversations have been evolving about his new upcoming responsibilities. If he must serve time in jail, there are now 3 lives that will be severely impacted by his incarceration.

Because I care deeply for him, I was present in the court when he pleaded guilty a couple years ago and I hope to be able to attend his sentencing hearing on 8/11. I hope fervently that he has the opportunity to continue working hard and provide for his new family.

Thank you for taking the time to read this as you consider Aldo's fate.

Roxy Wolosenko
Owner, Roxy Designs, a Landscape Design/Build company